42 P.3d 1166

Melissa Marie WELCH–
DODEN, Petitioner,

v.

The Honorable David L. ROBERTS, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

Terry Jay Welch–Doden, Real Party in Interest.

No. 1 CA–SA 01–0246.

Court of Appeals of Arizona, Division 1, Department E.

March 21, 2002.

Bill Stephens, P.C., by Bill Stephens, Phoenix, for Petitioner.

Terry Jay Welch–Doden, Wanette, OK, In Propria Persona.

## OPINION

BARKER, Judge.

¶ 1 This opinion resolves a statutory conflict in the meaning of "home state" as that phrase is used to determine initial jurisdiction between competing states in child custody disputes under Arizona's newly adopted Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). Ariz.Rev.Stat. ("A.R.S.") §§ 25–1001 to –1067 (Supp.2001). This opinion also addresses other issues concerning the implementation of the UCCJEA.

### PERTINENT FACTUAL AND PROCEDURAL HISTORY

¶ 2 This special action arises from the trial court's dismissal of a petition for dissolution of marriage, with a minor child, due to lack

of jurisdiction.[1] Melissa Welch–Doden ("mother") and Terry Welch–Doden ("father") were married in Arizona in November 1996. After being unable to secure employment in Arizona, mother and father moved to Oklahoma. Their child was born in Oklahoma on April 28, 1999.

¶ 3 After the child was born, mother and child moved back and forth between Arizona and Oklahoma. Mother claims that she, along with her husband and the child, intended to resume their residence in Arizona. She was traveling back and forth between the two states to research employment opportunities and living expenses in Arizona. On her last return to Arizona, mother claims that she was waiting for father to join her. When he did not, she filed for divorce and custody.

¶ 4 The timetable of the child's residence since birth until the filing of the petition is as follows: Oklahoma from birth on April 28, 1999 and for the next seven and one-half months (April 1999—December 1999); Arizona for three months (December 1999—March 2000); Oklahoma for six months (March 2000—September 2000); Arizona for the four months prior to the filing of the petition (September 2000—January 25, 2001). At all times, the child was with mother.

¶ 5 Mother filed for dissolution and custody on January 25, 2001 in Arizona. On February 8, 2001, two days after being served with notice of the Arizona petition, father filed a petition for divorce and custody in Oklahoma. His Oklahoma petition identified the pending Arizona litigation, but stated that he had not been properly served.[2]

¶ 6 On March 7, 2001, father appeared specially in Arizona to move to dismiss the Arizona petition for lack of jurisdiction. An evidentiary hearing was held on August 21, 2001. Father's attorney appeared telephonically. During the hearing, the trial judge spoke telephonically on the record with the judge presiding over the Oklahoma petition. This inquiry was to ascertain the status of the Oklahoma matter and confer with that judge as permitted by A.R.S. § 25–1010(A) (Supp.2001).[3]

¶ 7 After hearing from both sides and conferring with the Oklahoma trial judge, the trial judge ruled that Oklahoma had home state jurisdiction pursuant to UCCJEA. The trial judge determined Oklahoma had been the child's home state *within* the six months before the petition was filed (but not the home state *for* the six-month period immediately prior to the filing). Accordingly, the trial court found that Oklahoma was entitled to jurisdiction. This was so even though the trial judge determined that the first petition filed was mother's Arizona petition.

¶ 8 The trial judge dismissed the Arizona action and also denied mother's motion for reconsideration. In subsequent proceedings in Oklahoma, the Oklahoma trial judge granted father's decree of divorce and awarded custody to father on September 5, 2001. The net effect of these rulings was that the child, who resided with mother in Arizona, was to be placed in the custody of father in Oklahoma.

¶ 9 Mother filed a special action and requested a stay of the Arizona order dismissing her action. Because of a conflict in the UCCJEA pertaining to the interpretation of "home state," the fact that the child had at all times resided with mother, and the potential impact of this order on the child, we granted an initial stay to review this matter. After a

---

1. The entire petition was dismissed. The trial court could have retained jurisdiction as to the dissolution of the marriage, even without jurisdiction over the child. A.R.S. §§ 25–311, 25–312 (2000); *Schilz v. Superior Court*, 144 Ariz. 65, 68, 695 P.2d 1103, 1106 (1985) ("Jurisdiction over the divorce does not necessarily imply jurisdiction over related proceedings."). Whether the dissolution itself should have been dismissed has not been presented in this special action and, therefore, is not addressed. *See Carrillo v. State*, 169 Ariz. 126, 132, 817 P.2d 493, 499 (App. 1991).

2. Mother originally mailed an acceptance of service to father. Father informed mother that he would not sign the acceptance of service. Mother then hired the sheriff's department of the county in which father resided to serve the documents. Service was completed on February 6, 2001.

3. "A court of this state may communicate with a court in another state concerning a proceeding arising under this chapter [of the UCCJEA]." A.R.S. § 25–1010(A).

review of mother's petition,[4] we determined that the trial judge was correct in dismissing mother's custody petition. We dissolved the stay, accepted jurisdiction, and indicated that an opinion would follow with our reasoning. This is that opinion.

## JURISDICTION

■ ¶ 10 We accept special action jurisdiction to resolve a purely legal question of statutory interpretation. *See State ex rel. McDougall v. Superior Court (West)*, 173 Ariz. 385, 386, 843 P.2d 1277, 1278 (App. 1992). The question of "home state" jurisdiction under the UCCJEA is of first impression, has statewide importance, and is likely to recur. *See Gray v. Irwin*, 195 Ariz. 273, 275, 987 P.2d 759, 761 (App.1999). Therefore, special action jurisdiction is appropriate.

## DISCUSSION

### Issues Presented

¶ 11 We consider several issues: First, does the UCCJEA provide that home state jurisdiction is based on a child residing in a state (a) for a six-month period *immediately prior* to the filing of a custody petition, or (b) for a

---

4. Father filed a responsive brief through counsel in Oklahoma. Father's counsel filed a motion for admittance pro hac vice, but did not comply with the pertinent rule. *See* Ariz. R. Sup.Ct. 33(D). Accordingly, we denied father's motion and do not consider the responsive brief.

5. A.R.S. § 25–1031 provides in full as follows:

> A. Except as otherwise provided in § 25–1034, a court of this State has jurisdiction to make an initial child custody determination only if any of the following is true:
> 1. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.
> 2. A court of another state does not have jurisdiction under paragraph 1 or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under § 25–1037 or 25–1038 and both of the following are true:
> (a) The child and the child's parents, or the child and at least one parent or a person

six-month period that is completed *at any time within* six months of the filing?

¶ 12 Second, if a state has home state jurisdiction, does home state jurisdiction then become pre-eminent, thereby precluding a court without home state jurisdiction from considering the child's best interests for jurisdictional purposes?

¶ 13 And finally, does a state with home state jurisdiction have jurisdictional priority when a petition in another state was filed first-in-time?

¶ 14 All of the issues pertain to the question of jurisdiction to make an *initial* custody determination. There is a separate (but intertwined) statutory scheme for *continuing* jurisdiction after an initial custody determination in compliance with the UCCJEA has been made. A.R.S. § 25–1032.

### The Relevant Statutes and the Statutory Conflict

¶ 15 Section 25–1031 is the statutory starting place for determining initial jurisdiction.[5] In summary, subsection B makes it clear that Arizona *only* has jurisdiction pursuant to subsection A. A.R.S. § 25–1031(B) ("Subsection A of this section is the *exclusive* jurisdic-

---

> acting as a parent, have a significant connection with this state other than mere physical presence.
> (b) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships.
> 3. All courts having jurisdiction under paragraph 1 or 2 have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under § 25–1037 or 25–1038.
> 4. A court of any other state would not have jurisdiction under the criteria specified in paragraph 1, 2 or 3.
> B. Subsection A of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
> C. Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination.

A.R.S. § 25–1031. A.R.S. § 25–1034, enumerated in subsection A, pertains to temporary emergency jurisdiction, which is not at issue in this case. The Oklahoma statute is the same as § 25–1031. Okla. Stat. Ann. tit. 43, § 551–201 (Supp. 2000).

tional basis.") (emphasis added). Subsection A, paragraph (1) provides for Arizona to have jurisdiction when Arizona qualifies as a home state. A.R.S. § 25–1031(A)(1). If a state is the "home state" under this paragraph, it has jurisdiction. *Id.* There is no further factual inquiry on the *jurisdictional* issue.[6] Paragraphs (2)-(4) of subsection A provide the circumstances whereby Arizona may have jurisdiction when it does *not* qualify as the home state. *Id.* Paragraph 2, in particular, requires the court to consider whether the child has a significant connection to the state (as well as other factors) before jurisdiction may be found. *Id.* Subsection C clarifies that the presence of the child is neither necessary nor sufficient to establish jurisdiction. A.R.S. § 25–1031(C).

¶ 16 In considering § 25–1031 as it relates to the present case, we must also take into account the statutory definition of "home state." Section 25–1002(7)(a) defines "home state" as follows:

In this chapter, unless the context otherwise requires ... "[h]ome state" means: The state in which a child lived with a parent or a person acting as a parent for *at least six consecutive months immediately before the commencement of a child custody proceeding,* including any period during which that person is temporarily absent from that state.

A.R.S. § 25–1002(7)(a) (emphasis added). It is the application of this definition of "home state" to § 25–1031(A)(1) that creates the statutory conflict.

¶ 17 Specifically, under § 25–1031(A)(1), a state has jurisdiction if the "home state" qualifier is met under either one of two elements:

This state is the [1] home state of the child *on the date of the commencement of the proceeding,* or [2] was the home state of the child *within six months before the commencement* of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

A.R.S. § 25–1031(A)(1) (emphasis added). The definition of "home state" under § 25–1002(7)(a) provides, however, that a state is a "home state" *only* when "a child lived with a parent ... for at least six consecutive months *immediately before* the commencement of a child custody proceeding." [7] (Emphasis added.)

¶ 18 Thus, applying literally the definition of "home state" from § 25–1002(7)(a) to element one of § 25–1031(A)(1) renders superfluous the language in § 25–1031(A)(1) that says jurisdiction lies when a state is the home state "on the date of the commencement of the proceeding." That latter phrase merely restates what is already required by the definition of "home state" in § 25–1002(7)(a).

¶ 19 Element two of § 25–1031(A)(1) poses a more significant problem in statutory construction when the home state definition from § 25–1002(7)(a) is applied: the two statutes directly conflict. Element two of § 25–1031(A)(1) provides that a state has jurisdiction if it is the "home state ... *within six months before*" the commencement of the child custody proceeding. Section 25–1002(7)(a), as noted above, requires that in order to be a "home state" at all, a child must have lived in a state for six consecutive months "immediately before" the child custody proceeding. Thus, if a child's home state two months before a proceeding was commenced is different from the state to which a child has permanently moved (and in which the proceeding was commenced), § 25–1002(7)(a) would indicate there is no home state at all. Initial jurisdiction would then be determined based on substantial connections to the state and other factors under § 25–1031(A)(2). On the other hand, under the same facts, element two of § 25–1031(A)(1) would declare the *prior state* the home state because it was the home state *within* six months of the filing. Initial jurisdiction would then be in the prior state regardless of

---

6. Please see ¶¶ 41–43, *infra* for a discussion of a factual inquiry *in the home state* whereby the *home state* determines whether another state is a more convenient forum.

7. We note that there are exceptions when a child is "temporarily absent from that state." A.R.S. § 25–1002(7)(a). That provision is not at issue here.

any significant connections to the state in which the filing was made.

¶ 20 The statutory conflict between element two of § 25–1031(A)(1) and § 25–1002(7)(a) is directly at issue here. The child lived in Oklahoma for six consecutive months ending in September 2000. The child then resided in Arizona for the next four months, immediately before the petition was filed in January 2001. Thus, under father's (and the trial judge's) reading of the statute, Oklahoma is the home state as a matter of law under element two of § 25–1031(A)(1). Oklahoma, under this view, was the home state (from March to September 2000) *within* six months of the filing of the petition in January 2001 and thus has initial jurisdiction.

¶ 21 Under mother's reading of the statute, however, neither Oklahoma nor Arizona is the home state as neither state meets the requirement of § 25–1002(7)(a) that the child live in the state "for at least six consecutive months *immediately before the commencement*" of the proceeding. Under that scenario, Oklahoma does not have initial jurisdiction. The trial court would be required to hold a hearing to determine whether there were significant connections with Arizona and other factors per § 25–1031(A)(2), to determine whether Arizona should have initial jurisdiction. Thus, depending upon how one resolves the conflict between these competing interpretations, the outcome may differ.

### Standards for Statutory Construction

¶ 22 In construing statutes, we have a duty to interpret them in a way that promotes consistency, harmony, and function. *State v. Behl,* 160 Ariz. 527, 529–30, 774 P.2d 831, 833–34 (App.1989); *State v. Sweet,* 143 Ariz. 266, 270–71, 693 P.2d 921, 925–26 (1985); *Hill v. Gila County,* 56 Ariz. 317, 324, 107 P.2d 377, 380 (1940). If possible, each word or phrase must be given meaning so that no part is rendered void, superfluous, contradictory or insignificant. *State v. Superior Court (Kerr–McGee Corp.),* 113 Ariz. 248, 249, 550 P.2d 626, 627 (1976). The primary purpose "is to determine and give effect to the legislative intent behind the statute, considering among other things the context of the statute, the language used and

the spirit and purpose of the law." *Midland Risk Management Co. v. Watford,* 179 Ariz. 168, 171, 876 P.2d 1203, 1206 (App.1994).

¶ 23 To appropriately resolve the conflict here, it is critical to examine the stated purposes behind the changes in home state jurisdiction brought about by the UCCJEA.

### The Purpose Behind Home State Jurisdiction Under the UCCJEA

¶ 24 The precursor to the UCCJEA was the Uniform Child Custody Jurisdiction Act ("UCCJA"). It was developed in 1968 by the National Conference of Commissioners on Uniform State Laws and adopted by Arizona in 1978. *J.D.S. v. Franks,* 182 Ariz. 81, 88, 893 P.2d 732, 739 (1995). The stated purposes of the UCCJA were to avoid jurisdictional competition and conflict, promote cooperation between states, discourage the use of the interstate system to continue custody controversies, deter abductions, avoid relitigation in different states, and facilitate enforcement of custody decrees between states. UCCJA § 1, 9 Uniform Laws Annotated ("U.L.A.") 271 (1999); A.R.S. § 25–431 (repealed 2001); *see also J.D.S.,* 182 Ariz. at 90, 893 P.2d at 741; *Loper v. Superior Court,* 126 Ariz. 14, 17, 612 P.2d 65, 68 (App.1980).

¶ 25 All fifty states, the District of Columbia and the Virgin Islands adopted the UCCJA. 9 U.L.A. 261–62. However, many states departed from its original text, and subsequent litigation produced substantial inconsistencies in interpretation among state courts— defeating the goals of a uniform interstate jurisdictional act. As the drafters of the UCCJEA noted:

> A number of adoptions, however, significantly departed from the original text. In addition, almost thirty years of litigation since the promulgation of the UCCJA produced substantial inconsistency in interpretation by state courts. As a result, the goals of the UCCJA were rendered unobtainable in many cases.

9 U.L.A. 650.

¶ 26 In particular, prior to the adoption of the UCCJEA, the UCCJA provided four separate bases to take initial jurisdiction in child

custody disputes. *See* A.R.S. § 25–433 (repealed 2001).[8] Those bases included (1) domicile or home state, (2) significant connections to the state and a consideration of the child's relationships, training, care and protection, (3) the child's best interests, and (4) emergency. *Id.*

¶ 27 The original drafters of the UCCJA had assumed that home state jurisdiction was the most appropriate factor in demonstrating the best interests of the child. 9 U.L.A. 152. They also thought that a state should be able to proceed without delay and, therefore, should find jurisdiction on any acceptable basis. *Id.* Thus, the drafters included the four separate bases for jurisdiction. However, state courts were split as to whether the four bases were equal or whether home state was preferred. *See J.D.S.*, 182 Ariz. at 90, 893 P.2d at 741 (describing cases preferring home state jurisdiction over other factors). *But* see *Merman v. Merman*, 412 Pa.Super. 247, 603 A.2d 201, 204 (1992) (stating that in certain circumstances, a trial court may determine that the home state is not the most appropriate forum, despite any home state preference); *Pomraning v. Pomraning*, 13 Ark.App. 258, 682 S.W.2d 775, 778–79 (1985) (holding that even though wife had lived in state for a shorter period than required for home state jurisdiction, that did not preclude

jurisdiction over custody issues); and *E.E.B. v. D.A.*, 89 N.J. 595, 446 A.2d 871, 879 (1982) (holding that the UCCJA does not contemplate blind obedience to home state jurisdiction). These conflicts created an unworkable and non-uniform interstate act.

¶ 28 Additionally, in 1981 a significant federal statute was passed by the United States Congress. That statute, the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. § 1738A, was aimed at interstate custody problems that continued to exist after the adoption of the UCCJA. 9 U.L.A. 650. It mandated states to apply full faith and credit to interstate custody decisions. *Id.* Importantly, it did not allow for full faith and credit on the four bases as set forth in the UCCJA. 28 U.S.C. § 1738A(c)(2). Instead, enforceability[9] under the PKPA was based on the priority of home-state jurisdiction:

> A child custody or visitation determination made by a court of a State is consistent with the provisions of this section *only if such State* (i) *is the home State* of the child on the date of the commencement of the proceeding, *or* (ii) *had been the child's home State within six months* before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a

---

**8.** The full text of that now-dated statute provides:

> A. The superior court of the state of Arizona is vested with jurisdiction to make a child custody determination by initial or modification decree if any of the following apply:
> 1. This state is the domicile or the home state of the child at the time of commencement of the proceeding or had been the child's domicile or home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.
> 2. It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships.
> 3. The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child

because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent.
> 4. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs 1, 2 or 3 or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.
> B. Except pursuant to subsection A, paragraphs 3 and 4, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
> C. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.
> A.R.S. § 25–433 (repealed 2001).

**9.** "PKPA only governs enforceability of one state's custody order in another state ... [it] 'does not purport to control jurisdiction to issue an initial order.' " *In re Jorgensen*, 627 N.W.2d 550, 559 (Iowa 2001) (citation omitted).

contestant or for other reasons, and a contestant continues to live in such State.

28 U.S.C. § 1738A(c)(2)(A) (emphasis added).

¶ 29 In 1997, the National Conference of Commissioners on Uniform State Laws, which had authored the UCCJA, drafted the UCCJEA. The main purposes for revising the UCCJA were uniformity and the need to avoid disputes between competing jurisdictions. *See* 9 U.L.A. 649–52. As the drafters of the uniform act noted, lack of uniformity between jurisdictions "increases the costs of the enforcement action; it decreases the lack of certainty of outcome; and it often turns enforcement of a child custody or visitation order into a long and drawn out process." The National Conference of Commissioners on Uniform State Laws, *Uniform Child Custody Jurisdiction and Enforcement Act* (2001).[10] Arizona adopted the UCCJEA effective January 1, 2001.[11] A.R.S. §§ 25–1001 to—1067.

¶ 30 The UCCJEA drafters dealt specifically with the conflict created by differing jurisdictions taking contrary views of the four bases of jurisdiction.[12] They reconciled the jurisdictional provisions of the UCCJA with the PKPA:

> The UCCJA, however, specifically authorizes four independent bases of jurisdiction without prioritization. Under the UCCJA, a significant connection custody determination may have to be enforced even if it would be denied enforcement under the PKPA [which prioritizes home state jurisdiction]. *The UCCJEA prioritizes home state jurisdiction* [.]

9 U.L.A. 650–51 (emphasis added). The drafters made it clear that the new act was to give priority to a finding of home state jurisdiction over any other jurisdictional provisions.

¶ 31 Furthermore, the UCCJEA completely eliminates a determination of "best interests" of a child from the jurisdictional inquiry. 9 U.L.A. 649–52. These changes advance a more efficient and "bright line" jurisdictional rule consistent with the UCCJEA's purpose. 9 U.L.A. 672. The UCCJEA specifically seeks to avoid a judicial analysis of substantive issues in the determination of jurisdiction. *Id.* Additionally, as noted above, the statutory text of § 25–1031(A) allows consideration of other substantive factors *only* if no state qualifies as a "home state."

¶ 32 It is clear from the drafters' intent that the UCCJEA should be construed to promote one of its primary purposes: avoiding the jurisdictional competition and conflict that flows from hearings in competing states when each state substantively reviews subjective factors (such as "best interests") for purposes of determining initial jurisdiction. With this fundamental purpose in mind, when there is a statutory conflict in the application of home state jurisdiction, the conflict should be resolved to strengthen (rather than dilute) the certainty of home state jurisdiction. This course is consistent with the UCCJEA's statutory purpose.

### Section 25–1031(A)(1) Modifies and Enlarges Section 25–1002(7)(a)

¶ 33 Given the fundamental purpose of the UCCJEA to establish the certainty of home state jurisdiction, it is clear to us that § 25–1031(A)(1) acts to enlarge and modify the definition of home state under § 25–1002(7)(a). We hold that "home state" for purposes of determining initial jurisdiction under § 25–1031(A)(1) is not limited to the time period of "six consecutive months immediately before the commencement of a child custody proceeding[.]" A.R.S. § 25–1002(7)(a). Instead, the applicable time period to determine "home state" in such cir-

---

**10.** *Available at* http://www.nccusl.org/nccusl/pubndrafts.asp (last visited Mar. 12, 2002).

**11.** As we note subsequently in this opinion, Arizona's act has several variations from the original uniform act. ¶¶ 35, 37–38, *infra.* For a complete listing of state variations from the uniform act, see UCCJEA, "Variations from Official Text," 9 U.L.A. 46–62 (Supp.2001).

**12.** The Commission revised other sections of the UCCJA regarding continuing exclusive jurisdiction, temporary emergency jurisdiction, and enforcement of custody and visitation orders. 9 U.L.A. 649–52. Those revisions are not at issue in this case.

cumstances is "within six months before the commencement of the [child custody] proceeding." A.R.S. § 25–1031(A)(1). This interpretation promotes the priority of home state jurisdiction that the drafters specifically intended. To adopt the reading that mother supports would result in narrowing home state jurisdiction. It would increase the number of potentially conflicting jurisdictional disputes in competing jurisdictions. This is contrary to the UCCJEA's purpose.

¶ 34 Even though the UCCJEA is a uniform act, which has been adopted by twenty-seven states and introduced in nine states,[13] we have found no cases that construe the statutory conflict at issue. While not discussing the conflict, other states have ruled in a manner that is consistent with the interpretation we adopt here. *E.g., In re McCoy*, 52 S.W.3d 297, 303–04 (Tex.App.2001) (finding that Texas was not the children's home state at any time during the six months prior to the filing of the suit); *Nesa v. Baten*, 736 N.Y.S.2d 173, 174 (N.Y.A.D.2002) ("New York had not been the children's home state at the time of commencement of the custody proceeding or within the preceding six months.").

¶ 35 We also note that the initial phrase in § 25–1002 permits the consideration of context as to the definitions (such as "home state") provided in that section of the UCCJEA. A.R.S. § 25–1002 ("In this chapter, *unless the context otherwise* requires ... '[h]ome state' means ...."). The reference to "unless the context otherwise requires" is a variation to the uniform act specifically added by the Arizona Legislature. UCCJEA, "Variations from Official Text," 9 U.L.A. 46 (Supp.2001). Here, the context does require a modification of "home state" as it is used in § 25–1031(A)(1). We emphasize, however, that based on the fundamental purpose of the UCCJEA to implement jurisdiction based on the home state, we would resolve the statuto-

ry conflict in the same manner even without the additional language in Arizona's version.

¶ 36 Thus, we conclude that the trial court did not err in rejecting mother's position and concluding that Oklahoma had home state jurisdiction.

### *The Role of the Child's "Best Interests"*

¶ 37 Mother also contends that even if Oklahoma is the home state according to the foregoing analysis, the trial judge still erred in not conducting a hearing to determine if jurisdiction was in the child's best interests. Mother puts forth two reasons: (1) Arizona's version of UCCJEA requires it, and (2) it would be inequitable and unfair not to consider the child's best interests in a determination of initial jurisdiction. We address each argument in turn.

■ ¶ 38 First, in contending that Arizona's version of the UCCJEA requires a "best interests" hearing even though home state jurisdiction is found elsewhere, mother relies on the prefatory phrase in § 25–1031(A): "[A] court of this State has jurisdiction to make an initial child custody determination only if *any of the following is true.*" Mother argues the phrase "if any of the following is true" allows courts to choose between the four bases of jurisdiction under the UCCJEA much as courts chose between the four bases of jurisdiction provided under the UCCJA. This argument is directly contrary to the express language of the statute.

¶ 39 As noted earlier, the plain language of § 25–1031(A) provides no possibility of having competing claims of jurisdiction when there is a home state. *Infra,* ¶ 15. Subsection (A), paragraph (1) provides a state with jurisdiction if it *is* the home state. A.R.S. § 25–1031(A)(1). Paragraphs (2)—(4) provide a state that is *not* the home state with jurisdiction only if there is no home state or the home state has declined to exercise that jurisdiction. A.R.S. § 25–1031(A)(2)–(4).[14]

---

13. *Available at* Http://www.nccusl.org/nccusl/uniformact factsheets/uniformacts-fs-uccjea.asp (last visited Mar. 12, 2002).

14. Paragraph (2) provides jurisdiction if "a court of another state does not have jurisdiction or a court of the home state of the child has declined to exercise jurisdiction[.]" A.R.S. § 25–

1031(A)(2). Paragraph (3) provides jurisdiction if "[a]ll courts having jurisdiction under paragraph 1 or 2 have declined to exercise jurisdiction[.]" A.R.S. § 25–1031(A)(3). Paragraph (4) allows jurisdiction if "[a] court of any other state would not have jurisdiction under the criteria

Thus, the addition of the phrase "if any of the following is true" only confirms the statutory scheme allowing jurisdiction under more than one basis *if* the statutory requirements are met. Here, the statutory requirements for jurisdiction under paragraphs (2)-(4) are not met. Oklahoma is the home state and has not declined to exercise its jurisdiction.

¶ 40 Arizona's legislative history is silent as to the specific language "if any of the following is true," but consistent with the construction we give that phrase. The legislative history makes it clear—as the plain language of the statute expressly provides—that choosing between the various bases of jurisdiction as allowed under the prior UCCJA is no longer an option under the UCCJEA:

> [Section 25–1031(A)(1)] *[e]stablishes the home state* of the child as the basis for initial jurisdiction, *replacing the current* [now repealed] *four bases for jurisdiction.*

Final House Bill Summary, H.B. 2305, 44th Leg., 2nd Reg. Sess. (2000) (emphasis added). Accordingly, if there is any ambiguity in the phrase "if any of the following is true," we construe it consistently with the express language of the statute, the legislative history and the purpose of the UCCJEA as set forth above: home state jurisdiction is controlling (apart from emergencies under § 25–1034) even in the face of other competing equitable factors.

¶ 41 Second, mother argues that the equitable issues presented in a case such as this one (child having always been with mother; mother and child having significant connections in Arizona; mother and child having lived in Arizona for the four months prior to filing) or in a hypothetical case (child lives five months and 29 days in one state, but the prior six months in another resulting in home state jurisdiction in the prior case) require a hearing to consider the child's best interests. Mother's argument does not consider that the UCCJEA expressly provides for a factual hearing *in the home state* in which that state may decline to exercise its jurisdiction and allow another jurisdiction to proceed. A.R.S. § 25–1037. This hearing may include a "best interests" determination.

¶ 42 The drafters of the UCCJEA expressly recognized—and sought to eliminate—the jurisdictional disputes that resulted when "best interests" was used to determine initial jurisdiction. That language and inquiry, present in the previously enacted UCCJA, was intentionally omitted from the newly-drafted UCCJEA. The drafters stated:

> The *"best interest" language* in the jurisdictional sections of the UCCJA was *not intended to be an invitation to address the merits of the custody dispute in the jurisdictional determination* or to otherwise provide that "best interests" considerations should override jurisdictional determinations or provide an additional jurisdictional basis.
>
> [This draft] eliminates the term "best interests" in order to clearly distinguish between the jurisdictional standards and the substantive standards relating to custody and visitation of children.

9 U.L.A. at 651–652 (emphasis added).

¶ 43 Thus, the "best interests" analysis does not take place in determining jurisdiction. "Best interests" may be fully explored and considered in the context of a request under A.R.S. § 25–1037.[15] That provision express-

---

specified in paragraph 1, 2 or 3." A.R.S. § 25–1031(A)(4).

**15.** The full text of A.R.S. § 25–1037 reads as follows:

A. A court of this state that has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised on motion of a party, the court's own motion or request of another court.

B. Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors including:

1. Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.

2. The length of time the child has resided outside this state.

3. The distance between the court in this state and the court in the state that would assume jurisdiction.

ly allows for the court having home state jurisdiction to consider "all relevant factors" in determining whether the home state is an "inconvenient forum" such that jurisdiction should be elsewhere. A.R.S. § 25–1037(B).

¶ 44 The issue of an inconvenient forum "may be raised on motion of a party, the court's own motion or request of another court." A.R.S. § 25–1037(A). Any such request, however, must be pursued in Oklahoma rather than Arizona, as Oklahoma has home state jurisdiction pursuant to A.R.S. § 25–1031(A)(1). This is critical: To allow the state without home state jurisdiction to conduct the hearing would lead to the jurisdictional competition the drafters sought to avoid. Thus the equitable arguments that mother wishes to pursue are not eliminated, but are merely re-directed to the home state. If she chooses, mother can ask the Oklahoma court to relinquish jurisdiction.

¶ 45 Accordingly, mother's argument that the trial judge erred in not considering the "best interests" of the child, when dealing with a jurisdictional question under § 25–1031(A)(1), is wrong. The trial judge correctly determined that this was an issue for the Oklahoma court.

### First–in–Time Filing Does not Trump Home State Jurisdiction

¶ 46 Mother also argues, relying on A.R.S. § 25–1036(A), that Arizona should have jurisdiction as her filing was first-in-time. This argument fails as well. A.R.S. § 25–1036 provides in pertinent part as follows:

> [A] court of this State *shall not exercise its jurisdiction under this article if,* at the time of the commencement of the proceeding, *a proceeding concerning the custody of the child has been commenced* in a court of another state having jurisdiction substantially in conformity with this chapter[.]

*Id.* (emphasis added). Oklahoma has a similar provision. Okla. Stat. Ann. tit. 43, § 551–206(A) (Supp.2000).

¶ 47 Mother's argument is that this provision mandates jurisdiction in Arizona as the filing was first-in-time. What mother ignores is that the first-in-time filing must be in a state "having jurisdiction substantially in conformity with this chapter." A.R.S. § 25–1036(A); *see also* Okla. Stat. Ann. tit. 43, § 551–206(A). Because Oklahoma had home state jurisdiction, Arizona did not have jurisdiction "substantially in conformity with this chapter." *Id.* Thus, the first-in-time filing granted mother no rights. The trial court did not err by rejecting mother's request that a first-in-time filing conferred initial jurisdiction upon the Arizona Court.

### CONCLUSION

¶ 48 For the foregoing reasons, the trial court did not err in determining that it was without jurisdiction to consider mother's child custody request. Therefore, we deny mother's requested relief.

THOMPSON, P.J. and LANKFORD, J., concurring.

---

4. The relative financial circumstances of the parties.
5. Any agreement of the parties as to which state should assume jurisdiction.
6. The nature and location of the evidence required to resolve the pending litigation, including testimony of the child.
7. The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.
8. The familiarity of the court of each state with the facts and issues in the pending litigation.

C. If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings on condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.
A.R.S. § 25–1037.