No. 05-709

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 21

_____

BRENDA KAY STEPHENS,                    )
                                        )
           Petitioner,                  )
                                        )    O P I N I O N
      v.                                )    A N D
                                        )    O R D E R
FOURTH JUDICIAL DISTRICT COURT, HON.    )
JOHN W. LARSON,                         )
                                        )
           Respondent.                  )

_____

¶1     Petitioner Brenda Kay Stephens (Brenda) seeks a Writ of Prohibition to the Fourth Judicial District Court, Missoula County, prohibiting it from hearing, enforcing, or deciding any parenting matters concerning her minor children, or in the alternative, that this Court direct the District Court to suspend temporarily its proceeding pending a final resolution of this matter. In an Order dated December 20, 2005, we directed the District Court and Jesse Delbert Stevens (Jesse), the father of the minor children, to respond to Brenda's Petition. Both filed responses.

¶2     Brenda and Jesse were married in Montana on November 5, 1999. The parties have two minor children. Jesse, Brenda and their children lived in Montana until sometime in 2002 when they moved to Arkansas. The family returned to Montana in the spring of 2005. The parties took steps at that time that would imply that they intended the move to Montana to be permanent. For example, Jesse and Brenda enrolled their children in schools in Missoula during May 2005. Brenda applied for and received a Montana conservation license. She also opened a bank account in Montana.

¶3     Brenda left Montana with the two minor children in August 2005 and returned to Arkansas. Jesse filed a Petition for Dissolution on August 10, 2005. Jesse's Petition for Dissolution also included a proposed parenting plan. Brenda filed a motion to dismiss the Petition for Dissolution based upon the District Court's lack of jurisdiction over the minor children. The District Court denied Brenda's motion in an Order, dated November 28, 2005, on the grounds that it had jurisdiction to resolve the parenting issue based upon § 40-4-211(1)(a)(ii), MCA. This provision states that a district court has jurisdiction to decide parenting matters if Montana "had been the child's home state within 6 months before commencement of the proceedings" and the child is absent from Montana because of the child's removal by a parent and the other parent continues to live in Montana. The District Court further ordered Brenda to return the children to Montana on or before December 24, 2005.

¶4     Brenda argues in her petition that the District Court mistakenly interpreted § 40-4-211(1)(a)(ii), MCA, as conferring jurisdiction on the District Court whenever a child's home state has been Montana within six months before the commencement of the proceedings. Brenda points out the District Court's order makes no reference to "home state" as defined according to the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA). Section 40-7-103(7), MCA. The UCCJEA defines "home state" as being "the state in which a child lived with a parent or a person acting as parent for *at least 6 consecutive months* immediately before the commencement of a child custody proceeding." Section 40-7-103(7), MCA. Brenda argues that the UCCJEA sets six consecutive months as a minimum length of residence for the children before Montana

2

can be considered the children's home state. The District Court found that Jesse and Brenda returned to Montana in May 2005 and that Jesse filed his Petition for Dissolution on August 10, 2005.

¶5 The District Court and Jesse concede that § 40-4-211(1)(a)(ii), MCA, cannot bestow jurisdiction in this matter. They argue instead that the District Court has jurisdiction pursuant to § 40-4-211(1)(b), MCA, in that accepting jurisdiction would be in the best interests of the children based on the fact that the minor children and Jesse and Brenda have a significant connection with Montana. In making this argument, the District Court and Jesse contend that the children have no "home state" for purposes of the UCCJEA, §§ 40-7-101 to -317. They argue that Arkansas lost its status as the minor children's home state when the entire family moved to Montana in May of 2005. Montana and Arkansas, they argue, condition the application of the six-month grace period upon a parent, or person acting as a parent, remaining in the former state. Section 40-7-201(1)(a), MCA; Ark. Code Ann. § 9-19-201(a)(1). Both parents moved to Montana and lived with the minor children in May 2005, and no parent continued to reside in Arkansas. In the absence of any "home state" under the UCCJEA, the District Court and Jesse argue that the provisions of § 40-4-211(1)(b), MCA, apply. We disagree.

¶6 The National Conference of Commissioners on Uniform State Laws drafted the UCCJEA in 1997. Montana enacted the UCCJEA in 1999. *See* §§ 40-7-101 to -317, MCA; *Stoneman v. Drollinger*, 2003 MT 25, ¶ 14, 314 Mont. 139, ¶ 14, 64 P.3d 997, ¶ 14. The UCCJEA sought to increase uniformity in state laws regarding jurisdiction and custody matters and further sought to avoid disputes between competing jurisdictions.

*See* Unif. Child Custody Jurisdiction Enforcement Act, 9 U.L.A. 649-52 (1997). The UCCJEA drafters dealt specifically with the conflict created by differing jurisdictions taking contrary views of the bases of jurisdiction by choosing to "prioritize[] home state jurisdiction." 9 U.L.A. 651. The drafters, thus, made it clear that the UCCJEA would give priority to a finding of home state jurisdiction over any other jurisdictional provisions.

¶7     The UCCJEA also completely eliminates a determination of "best interests" of a child from the original jurisdictional inquiry. 9 U.L.A. 649-52; *In re Marriage of Fontenot*, 2003 MT 242, ¶ 15, 317 Mont. 298, ¶ 15, 77 P.3d 206, ¶ 15. These changes advance a more efficient and "bright line" jurisdictional rule consistent with the purpose of the UCCJEA. Section 201 cmt. 2, 9 U.L.A. 672. The UCCJEA specifically seeks to avoid a judicial analysis of substantive issues in the determination of jurisdiction. Section 201 cmt. 2, 9 U.L.A. 672. The statutory text of § 40-7-201(1), MCA, allows consideration of these other substantive factors only if no state qualifies as a "home state."

¶8     Considerable confusion has arisen in this matter regarding how to analyze the children's "home state" for purposes of determining jurisdiction. Such confusion seems understandable in light of the apparent contradictory language set forth in the Montana statutes. Section 40-7-201(1)(a), MCA, provides that Montana has jurisdiction to make an initial child custody determination if it is the child's home state "within six months before" the commencement of the child custody proceeding. By contrast, "home state" as defined under § 40-7-103(7), MCA, requires a child to have lived in Montana for "at

least 6 consecutive months immediately before the commencement of a child custody proceeding."

¶9    Thus, if a child's home state three months before a parent commenced a custody proceeding differs from the state to which a child has moved permanently, § 40-7-103(7), MCA, would indicate that no "home state" exists. The court would then determine initial jurisdiction based upon a significant connection to Montana and other substantive factors set forth under § 40-7-201(1)(b), MCA. On the other hand, under these same facts, § 40-7-201(1)(a), MCA, would declare the prior state the home state because it was a child's home state within six months of the filing of the action. Initial jurisdiction then would rest in the prior state regardless of any significant connections to the state in which the parent filed the action.

¶10    The facts and circumstances of this matter directly present the apparent statutory conflict between § 40-7-201(1)(a), MCA, and § 40-7-103(7), MCA. The children lived in Arkansas for more than six consecutive months ending in May 2005. The children then resided in Montana for the next three months, immediately before Jesse filed the petition in August 2005. Thus, under Brenda's interpretation of the statute, Arkansas is the children's home state as a matter of law under § 40-7-201(1)(a), MCA. Arkansas, under this view, was the children's home state (from 2002 to May 2005) within six months of the filing of the petition in August 2005 and therefore possesses initial jurisdiction.

¶11    Under the interpretation of the statute supported by the District Court and Jesse, neither Arkansas nor Montana qualifies as the children's home state as neither state meets

the requirements of § 40-7-103(7), MCA, that the children live in the state "for at least 6 consecutive months immediately before the commencement of a child custody proceeding." Under that scenario, the District Court would be required to hold a hearing to determine whether a significant connection with Montana existed and the other substantive factors set forth in § 40-7-201(1)(b), MCA, to determine whether Montana should have initial jurisdiction.

¶12 The drafters intended that the UCCJEA should be construed to promote one of its primary purposes of avoiding the jurisdictional competition and conflict that flows from hearings in competing states when each state substantively reviews subjective factors, such as "best interest," for purposes of determining initial jurisdiction. We thus resolve any statutory conflict in the application of home state jurisdiction in a manner consistent with the UCCJEA's intent of strengthening the certainty of home state jurisdiction.

¶13 As a result, we hold that "home state" for purposes of determining initial jurisdiction under § 40-7-201(1), MCA, is not limited to the time period of "6 consecutive months immediately before the commencement of a child custody proceeding." The applicable time period to determine "home state" in such circumstances should be "within 6 months before the commencement of the [child custody] proceeding." Section 40-7-201(1)(a), MCA. This interpretation promotes the priority of home state jurisdiction that the drafters of the UCCJEA specifically intended. The interpretation posed by the District Court and Jesse would result in narrowing home state jurisdiction. It would increase the number of potentially conflicting jurisdictional disputes in competing jurisdictions. This result conflicts with the UCCJEA's purpose.

¶14    This interpretation also comports with the result reached by other courts in reviewing the UCCJEA.  For example, in *Welch-Doden v. Roberts*, 42 P.3d 1166 (Ariz. Ct. App. 2002), the Arizona Court of Appeals determined that the Arizona trial court had no jurisdiction in a case whose facts parallel those presented here.  The child was born in Oklahoma in April 1999 and resided there for the next seven and a half months until December 1999.  The child then resided in Arizona for three months from December 1999 through March 2000.  The child returned to Oklahoma for the next six months from March 2000 through September 2000.  At that point, the mother moved with the child back to Arizona for four months before the mother filed a petition for dissolution and child custody on January 25, 2001.  *Welch-Doden*, 42 P.3d at 1168.

¶15    The court held that the UCCJEA's priority on home state jurisdiction led to the conclusion that Oklahoma possessed "home state" status as of the date of the filing of the petition in January 2001.  *Welch-Doden*, 42 P.3d at 1174.  The court determined that Oklahoma had been the child's home state within the six months before the petition had been filed even though the child had not lived in Oklahoma for the six-month period immediately before the filing of the petition.  *Welch-Doden*, 42 P.3d at 1174.  Other states too have reached this result.  *See, e.g., In re McCoy*, 52 S.W.3d 297, 303-04 (Tex. App. 2001) (finding that Texas was not the children's home state anytime during the six months before the filing of the action); *Nesa v. Baten*, 736 N.Y.S.2d 173, 174 (N.Y.App. Div. 2002) ("New York had not been the children's home state at the time of commencement of the custody proceeding or within the preceding six months.")

¶16    A child's "home state" possesses jurisdiction to decide parenting matters.  Section

40-7-201(1)(a), MCA. Under the definition of "home state," no state other than Arkansas could become the "home state" of the minor children for the six months after May 1, 2005. Section 40-7-103(7), MCA; *see also* 28 U.S.C. § 1738A(b)(4). Jesse filed a petition for dissolution on August 10, 2005. A child's home state is determined at the time an action commences. Section 40-7-201(1)(a). The children had not lived in Montana with a parent or person acting as a parent for at least six consecutive months immediately before Jesse filed this action in Montana in August. Montana could not acquire "home state" status under the UCCJEA until November 2005, at the earliest.

¶17 Brenda removed the children from Montana in August 2005, thereby stopping the six-month clock needed to establish Montana as the "home state" for purposes of jurisdiction under the UCCJEA. The District Court and Jesse put much stock in the fact that the parties took steps that would imply their intention to make a permanent move to Montana in May 2005. Regardless of their intention, however, the fact remains that Brenda removed the children from Montana in August 2005 and returned them to their "home state" of Arkansas at that time. Thus, Arkansas was the children's "home state" under the UCCJEA when the family came to Montana in May 2005, and remained their "home state" when they returned to Arkansas in August 2005.

¶18 A writ of prohibition serves to stop a judicial proceeding when the tribunal lacks jurisdiction. Section 27-27-101, MCA. The District Court lacks subject matter jurisdiction over the parenting plan and child custody matters at issue in this case pursuant to the terms of the UCCJEA and Montana law. Brenda has no other "plain, speedy and adequate remedy in the ordinary course of law," other than a writ of

8

prohibition. Section 27-27-102, MCA. In light of the tender ages of the minor children and the upheaval from having to return from their home state of Arkansas to participate in a judicial process that likely would be reversed on appeal, we determine that the granting of the Writ of Prohibition would be appropriate under these circumstances.

¶19    THEREFORE, IT IS HEREBY ORDERED that Brenda's Application for a Writ of Prohibition is GRANTED. The District Court shall not hear, enforce, or decide any parenting or current issues concerning the parties' minor children. The District Court shall vacate all orders already issued relating to the parenting or custody of the parties' minor children. Brenda has not challenged the District Court's subject matter jurisdiction to hear Jesse's petition for dissolution and this Order has no bearing on the petition for dissolution.

¶20    The Clerk of the Supreme Court is directed to give notice to The Honorable John W. Larson and all counsel of record.

¶21    DATED this 31st day of January, 2006.

/S/ KARLA M. GRAY
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER