OPINION OF THE COURT
Timothy J. Lawliss, J.
On December 8, 2008, Christine L. filed a petition seeking custody of her children: Austin L. (d/o/b: xx/xx/xx) and Ethan L. (d/o/b: xx/xx/xx). On January 6, 2009, respondent, Jason L., the children’s father, filed a notice of motion seeking to have this court decline jurisdiction pursuant to Domestic Relations Law § 76-f in favor of the State of Missouri.
The following facts are undisputed. At the time Christine L. filed this petition, no court had ever issued any custody order regarding these children. Prior to May of 2008, when Jason L. relocated to the State of Missouri, the parties resided together in New York for several years. The subject children resided in the State of New York from the time of their respective births until June 29, 2008, when Christine L. and the children relocated to the State of Missouri. On or about November 22, 2008, both parties and the children returned to the State of New York. There is a dispute between the parties as to what Christine L.’s intentions were (and what Jason L. believed them to be) when she came to New York in November. The children and Christine L. have continuously resided in New York since November of 2008.
New York has adopted the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) which addresses obtaining and enforcing orders of custody and visitation across state lines (see Domestic Relations Law § 75). Domestic Relations Law § 76 (1) specifies when New York may exercise jurisdiction in an initial custody proceeding and provides, in part,
“[A] court of this state has jurisdiction to make an initial child custody determination only if:
“(a) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
“(b) a court of another state does not have jurisdic *1041 tion under paragraph (a) of this subdivision, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section seventy-six-f or seventy-six-g of this title, and:
“(i) the child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and “(ii) substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships . . .
Domestic Relations Law § 76 (1) (a)
The initial question before the court is whether New York has jurisdiction based upon Domestic Relations Law § 76 (1) (a) which is often referred to as “home state jurisdiction.” Domestic Relations Law § 75-a (7) defines “home state” as “the state in which a child lived with a parent ... for at least six consecutive months immediately before the commencement of a child custody proceeding.” Utilizing this definition, New York was not the home state of the children on December 8, 2008, when Christine L. filed her petition because she and the children did not live in New York from June 8, 2008 through December 8, 2008.
The home state jurisdiction analysis, however, does not conclude here. As noted above, Domestic Relations Law § 76 (1) (a) provides for initial custody jurisdiction where a court of this state “is the home state of the child on the date of the commencement ... or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent . . . continues to live in this state” (emphasis added). Under this language, even if New York is not the home state of the child on the date the action was commenced (as in this case), New York may still have home state jurisdiction if at any point during the six-month period prior to the commencement date, New York qualified as the home state of the child. In this case, on June 28, 2008 (the day before the children relocated to Missouri and a date less than six months prior to the commencement of the action) the children had lived with a parent in New York for six consecutive months. Thus, New York appears to qualify as “the home state of the child within six months before the commencement of the proceeding.”
*1042 The problem with this analysis arises when the language of Domestic Relations Law § 75-a (7) (the definition of home state discussed above) is compared with the language of Domestic Relations Law § 76 (1) (a). Under the language of Domestic Relations Law § 75-a (7) the only time New York could possibly be the home state of the child is when New York is the home state of the child on the date the action was commenced.
The court finds little guidance in resolving this conflict within New York jurisprudence.[1] A number of courts in other states have identified this conflict and resolved the conflict in favor of not limiting the time period to the date the action was commenced (see Stephens v Fourth Jud. Dist. Ct., 331 Mont 40, 128 P3d 1026 [2006]: Rosen v Celebrezze, 117 Ohio St 3d 241, 883 NE2d 420 [2008]; Lebejko v Lebejko, 2007 WL 824452, 2007 Conn Super LEXIS 602 [2007]; Welch-Doden v Roberts, 202 Ariz 201, 42 P3d 1166 [2002]).
These courts relied heavily on the intended purpose of the UCCJEA. The UCCJEA, drafted in 1997 by the National Conference of Commissioners on Uniform State Laws, placed a clear priority on home state jurisdiction (see Uniform Child Custody Jurisdiction and Enforcement Act [1997] §§ 101, 201, 9 [part 1A] ULA 657, 671 [1999]). As set forth in Stephens v Fourth Jud. Dist. Ct. (331 Mont 40, 44, 128 P3d 1026, 1029 [2006]):
“The drafters intended that the UCCJEA should be construed to promote one of its primary purposes of avoiding the jurisdictional competition and conflict that flows from hearings in competing states when each state substantively reviews subjective factors, such as ‘best interest,’ for purposes of determining initial jurisdiction. We thus resolve any statutory conflict in the application of home state jurisdiction in a manner consistent with the UCCJEA’s intent of strengthening the certainty of home state jurisdiction.”
Based upon this analysis, the Montana court held that home state is not limited to the date the action was commenced. Courts in other states, including Connecticut, Ohio and Arizona have all come to the same conclusion for similar reasons (see e.g. Rosen v Celebrezze, 117 Ohio St 3d 241, 883 NE2d 420 [2008]; Lebejko v Lebejko, 2007 WL 824452, 2007 Conn Super *1043 LEXIS 602 [2007]; Welch-Doden v Roberts, 202 Ariz 201, 42 P3d 1166 [2002]).
Furthermore, any reading of the UCCJEA as limiting home state status in initial custody determinations to the commencement date renders the conflicting language in Domestic Relations Law § 76 (1) (a) superfluous, a result which hardly could have been the intent of its drafters. It appears to this court, as well as others, that the language of Domestic Relations Law § 76 (1) (a) is intended to address those instances when one parent leaves the home state of the child with the child. In those instances, that parent remaining in what was the home state of the child has a window of opportunity to petition a court for relief. The alternative statutory interpretation would result in that first state losing home state jurisdiction as soon as the child was removed (see Lebejko v Lebejko, 2007 WL 824452, 2007 Conn Super LEXIS 602 [2007]).
This court finds that “home state” for purposes of initial custody determinations is not limited to the commencement date of the action, but rather includes situations where a state is qualified as the “home state” at any time during the six months before commencement (see Matter of Nesa v Baten, 290 AD2d 663, 663 [3d Dept 2002] [although the statutory conflict is not discussed, the court does hold, in what was an initial custody determination, that “Family Court was entitled to conclude that New York had not been the children’s home state at the time of commencement of the custody proceeding or within the preceding six months” (emphasis added) thereby apparently adopting the expanded interpretation of Domestic Relations Law § 76 (1) (a)]).
Applying the facts of this case to law, the court finds New York was the home state of the subject children within six months prior to commencement of Christine L.’s action on December 8, 2008. As indicated above, as of June 28, 2008 New York was the home state of the children as the children resided continuously in New York for more than six months as of that date.
If the analysis concluded here, New York would have home state jurisdiction; however, Domestic Relations Law § 76 (1) (a) limits the expansion of home state status by requiring additionally that “the child is absent from this state but a parent . . . continues to live in this state.” Again, it appears this qualification of the expanded home state status is meant to address that situation described above wherein one parent leaves a state with the children but without the other parent.
*1044 In the instant matter, the children were not absent from New York at the time Christine L. filed her petition. The children had returned to New York with Christine L. Thus, New York does not have jurisdiction under Domestic Relations Law § 76 (1) (a). While it may seem illogical that New York would have had jurisdiction under Domestic Relations Law § 76 (1) (a) had the children not returned, it appears that the expansion provided by Domestic Relations Law § 76 (1) (a) was only meant to assist in very limited situations.
Domestic Relations Law § 76 (1) (b)
Because New York does not have home state jurisdiction under Domestic Relations Law § 76 (1) (a), the court next turns to Domestic Relations Law § 76 (1) (b) which provides for initial custody jurisdiction where a court of another state does not have home state jurisdiction[2] and where
“(i) the child and the child’s parents, or the child and at least one parent . . . , have a significant connection with this state other than mere physical presence; and
“(ü) substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships” (emphasis added).
The children have resided in the State of New York their entire lives, except for five months. It appears that most, if not all, of the children’s medical records exist in New York. Both paternal and maternal extended family members reside in Clinton County, New York. Jason L. alleges that Christine L. suffered from postpartum depression and exhibited signs of mental health issues. Christine L. alleges that her relevant medical care (including medical care regarding the births of the two subject children) took place in Clinton County, New York, with the exception of one doctor appointment in Missouri. The court finds that Christine L. did establish the likelihood that the chil *1045 dren and at least one parent have a significant connection with New York other than mere physical presence and that there is substantial evidence available in New York concerning the children’s protection, training and personal relationships. Based upon the above analysis, the court finds that New York has jurisdiction to determine custody of the subject children pursuant to Domestic Relations Law § 76 (1) (b).
Domestic Relations Law § 76-f
The court next turns to the final question presented: should the court find that New York is an inconvenient forum and decline to exercise jurisdiction under Domestic Relations Law § 76-f? Domestic Relations Law § 76-f requires that the court consider all relevant factors, including:
“(a) whether domestic violence or mistreatment or abuse of a child or sibling has occurred and is likely to continue in the future and which state could best protect the parties and the child;
“(b) the length of time the child has resided outside this state;
“(c) the distance between the court in this state and the court in the state that would assume jurisdiction;
“(d) the relative financial circumstances of the parties;
“(e) any agreement of the parties as to which state should assume jurisdiction;
“(f) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
“(g) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
“(h) the familiarity of the court of each state with the facts and issues in the pending litigation.” (See Domestic Relations Law § 76-f [2].)
The parties and the Law Guardian all had an opportunity to submit their position and relevant information (see Domestic Relations Law § 76-f [2]). No information was provided to the court.regarding paragraphs (d) and (e). Regarding paragraph (a), Christine L. makes allegations regarding Jason L.’s “increasingly abusive” conduct. Jason L. denies these allegations. Regarding paragraph (b), excepting five months, the chil *1046 dren have resided in New York their entire lives. Regarding paragraph (c) the distance between the courts exceeds 1,000 miles. Jason L. remains in Missouri while Christine L. and the children reside here. Regardless of where the proceeding takes place, one party must travel. The children are young and it is certainly more convenient for the children to communicate with their Law Guardian if their Law Guardian is in New York.[3] Regarding paragraph (f), the court has set forth previously its findings concerning the nature and location of the evidence in New York and concludes that it appears significantly more evidence exists in the State of New York. Regarding paragraph (g), the court has no knowledge of the ability of the court in Missouri to expeditiously decide this custodial dispute. This court, however, will commence a trial in this matter on March 19, 2009. Regarding paragraph (h), an initial appearance, a conference and consideration of jurisdiction (including both written and oral arguments) have taken place. To the best of this court’s knowledge, there has been limited involvement by the Missouri court with this custodial dispute.[4] Finally, the court finds no other factor supporting a finding that this court is an inconvenient forum. For these reasons, this court does not find that it is an inconvenient forum.
It is, now, therefore, adjudged, pursuant to Domestic Relations Law § 76 (1) (b), that this court has jurisdiction to make an initial child custody determination in this action; and it is further ordered, that Jason L.’s motion seeking to have this court decline jurisdiction pursuant to Domestic Relations Law § 76-f is hereby denied.

. (See Matter of Nesa v Baten, 290 AD2d 663 [3d Dept 2002].) Although the statutory conflict is not discussed, the court holding is instructive as set forth subsequently.

. Under Missouri law, Missouri also does not qualify as the children’s home state. “Home state” is defined by Missouri statute as “the state in which, immediately preceding the filing of [a] custody proceeding, the child lived with his parents [or] a parent . . . for at least six consecutive months .... Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.” (Mo Rev Stat § 452.445 [4].) Similar to the UCCJEA, the Missouri statute provides that with respect to initial custody jurisdiction Missouri has jurisdiction if it was the home state at the time of the commencement or had been the child’s home state within six months of the commencement. (See Mo Rev Stat § 452.450.) The children never resided in Missouri for six months.

. Given his age, Ethan is not going to be able to provide significant information to his Law Guardian. Austin, although young, may be old enough to communicate significant information to the Law Guardian. Certainly, given his young age, the possibility of effective communication would be greatly enhanced by face to face discussions with the Law Guardian in contrast with telephone contact between Austin and a potential law guardian in the State of Missouri.

. With both parties and their respective attorneys present in the Missouri Family Court, the undersigned Judge communicated with the assigned Missouri Judge. The court notes that jurisdiction issues were discussed and it was noted that the New York action was filed prior to the Missouri action. {See Domestic Relations Law § 76-e.)