**FILED**
**June 11, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0377  *In re:  Z.H.*

WALKER, J., dissenting.

Respectfully, I disagree with my colleagues that Virginia has significant connection jurisdiction over this abuse and neglect proceeding.  So, I also disagree with my colleagues that the circuit court's order terminating Petitioner's parental rights to Z.H. is void and unenforceable.[1]  I would find that the circuit court properly exercised "default" jurisdiction over this matter, under West Virginia Code § 48-20-201(a)(4) (2001).[2]

Under § 201(a)(2), when a child does not have a home state (or when his home state has declined to exercise home state jurisdiction), a court may exercise "significant connection" jurisdiction over a child custody proceeding if:

> (A) The child and the child's parents, or the child *and* at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence[3]; and

---

[1] I agree with the majority's analysis and conclusion that Z.H. does not have a home state.  I do not contest the majority's conclusion that Petitioner does not have a significant connection to West Virginia.

[2] *See In re K.R.*, 229 W. Va. 733, 743, 735 S.E.2d 882, 892 (2012) ("As to 'default' jurisdiction, section 201(a)(4) confers jurisdiction if there is no state which would have jurisdiction under any of the other sections.").

[3] Emphasis added.

1

(B) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships[.]

In concluding that Virginia has significant connection jurisdiction over this matter, the majority accepts that both subparts (A) (significant connections) and (B) (substantial evidence) of § 201(a)(2) are necessary conditions. But, it ignores that subpart (A), itself, includes two conditions: that the child must have a significant connection to the state *and* that least one parent does, too. (*See* emphasis, above).[4] This is made crystal clear in the majority's conclusion that Z.H. *himself* has a significant connection to Virginia "*through his parents*," but for no reason unique to him.

That conclusion is a bold step beyond the language of the UCCJEA that neither the Supreme Court of Illinois nor the Vermont Supreme Court was willing to take. *In re D.S.*, the Illinois case relied on by the majority, includes a single-sentence analysis of the connection of the infant and his parent to Illinois.[5] The Vermont Supreme Court

---

[4] I do not disagree with the majority's conclusion that substantial evidence of Z.H.'s care and protection is available in both Virginia and West Virginia. Perhaps more evidence is available on this side of the state line, but that, standing alone, does not determine whether significant connection jurisdiction exists. *See In Int. of S.M.A.*, 555 S.W.3d 754, 759 (Tex. App. 2018) ("Further, the question is not which state has the most significant connection with the children."). That contrasts with the question of whether Z.H. has a significant connection to Virginia, considered in the body of this separate opinion.

[5] 840 N.E.2d 1216, 1223 (Ill. 2005) ("On the second point, the record shows that D.S.'s father and six of his half-siblings are Illinois residents, and that respondent was a longtime Illinois resident at least until the morning of D.S.'s birth.").

2

engaged in a slightly longer analysis of significant connection jurisdiction in *In re M.S.*, but still conflated the issue of the child's connection to a state with that of his parents.[6] Regardless, neither court announced the rule that a child's significant connection to a state may be established solely through his parents, as the majority does in this case.[7]

When I apply § 201(a)(2)(A) as it is written to the evidence in this case, I see that Z.H. does not have a significant connection to Virginia, so that it cannot exercise significant connection jurisdiction over this matter. The statute is clear: "[t]he child and at least one parent" must "have a significant connection with this state *other than mere physical presence*[.]" At a minimum, then, a significant connection takes more than a toe over a state's line. Here, there is no toe and there is no line because Z.H. has never been physically present in Virginia. Ever.

The majority overlooks that statutory language and that fact. Instead, it grounds the conclusion that Z.H. has a significant connection to Virginia in the following:

---

[6] 176 A.3d 1124, 1134 (Vt. 2017).

[7] One could read those cases and the majority's opinion as articulating an "infant exception" to § 201(a)(2)(A), on the rationale that an infant's connection to any locale is tenuous, given his necessarily recent arrival. But, the drafters of the UCCJEA knew how to create special jurisdictional provisions for infants. We know this because they did so in the definition of "home state," § 102(g), which states that "[i]n the case of a child less than six months of age, the term [home state] means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period." Neither the drafters of the UCCJEA nor the West Virginia Legislature included a similar exception in the provisions regarding significant connection jurisdiction.

(1) Petitioner and Z.H.'s putative father live there; (2) Petitioner used suboxone in Virginia while carrying Z.H.; and (3) had West Virginia not instituted this abuse and neglect proceeding, then Petitioner would have taken Z.H. to Virginia. Those are not Z.H.'s connections. They are his parents'.

That difference matters. In *In re E.T.*, mother and father lived in Kansas.[8] Mother gave birth to E.T. in Missouri, who was hospitalized there for the first four months of his life.[9] A child protection case was started in that state, resulting in E.T.'s placement with a Missouri foster family.[10] Two days later, Kansas petitioned for the termination of mother and father's parental rights to E.T. based on mother's lengthy history of violence against her other children—the subject of numerous petitions and criminal proceedings in Kansas.[11] Mother moved to dismiss the Kansas case, arguing that Missouri (and not Kansas) was E.T.'s home state.[12] But, by that time, Missouri had determined that it *wasn't* E.T.'s home state, and so had dismissed the proceedings, there.[13] Ultimately, the Kansas court found that it had jurisdiction over the matter because mother and father had lived in

---

[8] *In re E.T.*, 137 P.3d 1035, 1038 (Kan. App. 2006) (overruled on other grounds in *In re B.D.-Y.*, 187 P.3d 594 (Kan. App. 2008)).

[9] *Id.*

[10] *Id.* at 1039.

[11] *Id.*

[12] *Id.*

[13] *Id.*

4

Kansas when E.T. was born and when the Kansas case had started.[14] The court terminated mother and father's parental rights to E.T. and they both appealed.[15]

As in this case, the Kansas Court of Appeals first concluded that because E.T. (who was less than six-months-old when the custody proceeding commenced) had never lived with a parent or person acting as a parent in Kansas or Missouri, the child did not have a home state.[16] Then, as in this case, the appellate court correctly considered significant connection jurisdiction. But, unlike the majority, the appellate court distinguished infant E.T.'s connections from those of his parents to determine that Kansas did not have significant connection jurisdiction over the proceeding. The court reasoned:

> Based on this court's analysis in *In re Adoption of Baby Girl B.,* it appears that a parent residing in a state and the mother's presence in that state during part of her pregnancy is not sufficient to establish a "substantial connection" between the child and the state. . . .

> Here, in determining that it had jurisdiction under K.S.A. 38–1348, the trial court found that E.T. "resided with [mother] until birth in her womb in the state of Kansas." In addition, the trial court found that both parents were residents of Kansas when the child was born and when the petition was filed in this case. Nevertheless, neither of these findings

---

[14] *Id.*

[15] *Id.* at 1041.

[16] *Id.* at 1042.

establishes that E.T. had a "significant connection" with Kansas.[17]

*A.M. v. Houston County Department of Human Resources* is also on point.[18] There, mother (a New Mexico resident) delivered A.M. in Alabama. Mother and A.M. tested positive for marijuana, father (also a New Mexico resident) tested positive for methamphetamine, and Alabama removed A.M.[19] According to the petition, mother had "an extensive history regarding protective services for other children in New Mexico, [ ] there were pending felony drug charges against the mother, and that, regarding [ ] mother, there was a pending extradition request from the State of New Mexico."[20] Later, mother was incarcerated in New Mexico, but father participated in post-adjudicatory services in Alabama.[21] Mother and father then moved to dismiss the Alabama case for lack of subject matter jurisdiction.[22] The court denied the motion, and, ultimately, terminated mother and father's parental rights to A.M.[23]

---

[17] *Id*. at 1043.

[18] 262 So.3d 1210 (Ala. Civ. App. 2017).

[19] *Id*. at 1212.

[20] *Id*. at 1212–13.

[21] *Id*. at 1213.

[22] *Id*.

[23] *Id*. at 1213, 1215

Father appealed on the grounds that New Mexico, and not Alabama, had subject matter jurisdiction. As in this case, the Alabama Court of Civil Appeals found that A.M. did not have a home state.[24] The appellate court then concluded that Alabama could not exercise significant connection jurisdiction over the case.[25] Turning to New Mexico—where father and mother resided, mother had carried A.M., and where she had an extensive history with protective services—the appellate court stated:

> In order for jurisdiction to have been proper in New Mexico under this subdivision, the child and at least one parent must have had a "significant connection" with New Mexico and "[s]ubstantial evidence ... concerning the child's care, protection, training, and personal relationships" must have been available in New Mexico. We are not directed to any evidence, let alone substantial evidence, concerning any connection of the child to New Mexico. Accordingly, New Mexico also would not have had jurisdiction under subdivision (2).[26]

*In re E.T.* and *A.M.* exemplify the statutory distinction the majority overlooks: the child's significant connection to a state is different from his parents'. E.T. did not have a significant connection to Kansas simply because his mother resided there, carried E.T. there, and was the subject of earlier abuse and neglect cases there. And, A.M. did not have a significant connection to New Mexico just because his parents lived there,

---

[24] *Id*. at 1218.

[25] *Id*.

[26] *Id*. (emphasis in original).

mother carried A.M. there, evidence was certainly available in that state regarding mother's drug abuse, and mother had a history with New Mexico child protective services. Those cases show that the Petitioner's significant connections to Virginia, as recounted by the majority—residency and prenatal drug use—do not establish Z.H.'s *own* significant connection to Virginia. In view of *In re E.T.*, *A.M. v. Houston County Department of Human Resources*, and the plain language of § 102(a)(2)(A), I conclude that Z.H. does not have a significant connection to Virginia. So, Because Petitioner and Z.H. do not *both* have a significant connection to Virginia, I would find that Virginia does not have significant connection jurisdiction over this case.

But, West Virginia does not have significant connection jurisdiction over this case, either. Petitioner merely delivered Z.H. here and then returned to Virginia. So where can Z.H. go? The drafters of the UCCJEA did not leave children like Z.H. in a jurisdictional no-man's land.[27] Under § 201(a)(4), this State may exercise "default jurisdiction" to make an initial child custody determination if "there is no state which would have jurisdiction under any of the other sections."[28] Kansas ultimately exercised

---

[27] The State reported in the Rule 11(j) update filed with this Court in March 2021 that Z.H. has lived with his current foster family since November 2018 and that he is thriving there.

[28] *In re K.R.*, 229 W. Va. at 743, 735 S.E.2d at 892.

default jurisdiction over E.T.'s case,[29] and Alabama did the same with A.M.'s.[30] This court should follow suit. Like E.T. and A.M., Z.H. has no home state, and no state has significant connection jurisdiction over his case. "Where [other] bases for jurisdiction are not present, jurisdiction by default remains. The UCCJEA requires that some forum must be available to make a child custody determination."[31] So, contrary to the majority, I would find that West Virginia is that forum and that the circuit court had subject matter jurisdiction over this case under § 201(a)(4).[32]

---

[29] *In re E.T.*, 137 P.3d at 1044.

[30] *A.M.*, 262 So.3d at 1218.

[31] *Barabarawi v. Rayyan*, 406 S.W.3d 767, 774 (Tex. App. 2013).

[32] Declination jurisdiction, W. Va. Code § 48-20-201(a)(3) is not issue, here, because "[j]urisdiction cannot be declined if it does not exist." *Id.*